IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                                  :
                                                        :
ELISEO MORALES GARCIA                                   :        Case No. 04-12461(ESL)
MARIBEL MENA MELENDEZ                                   :        Chapter 11
                                                        :
       Debtors.                                         :
                                                        :
_____                 :
                                                        :
ELISEO MORALES GARCIA                                   :
MARIBEL MENA MELENDEZ                                   :
                                                        :
       Plaintiffs,                                      :        Adv. Proc. No. 05-00102
                                                        :
v.                                                      :
                                                        :
MARIA ANTONIETA PEREZ GONZALEZ;                         :
FRANCISCO ALMEIDA, WANDA CRUZ                           :
QUILES AND THE CONJUGAL                                 :
PARTNERSHIP COMPOSED BY THEM;                           :
REAL ANON, INC.; RG PREMIER BANK                        :
OF PUERTO RICO; ET AL.                                  :
                                                        :
       Defendants.                                      :
_____                 :

## OPINION AND ORDER

This adversary proceeding is before the court upon the motions to dismiss filed by co-defendants Francisco Almeida and Wanda Cruz Quiles on May 10, 2006 (Dkt. # 72), and Real Anon, Inc. on May 26, 2006 (Dkt. # 79). Plaintiffs pray this court to declare null and void the public auction of real property belonging to the Gonzalez' family, and further pray for damages alleging that defendants' action violated the automatic stay provision of 11 USC § 362(a). Co-defendants allege that the properties sold in the public auction were not property of the estate and therefore not subject to the automatic stay on the ground that owning a share of the hereditary estate is not equivalent to owning a share of the properties constituting the hereditary estate.

Debtors Mr. Eliseo Morales Garcia and Maribel Mena Melendez (the "Plaintiffs") filed an opposition to the motions to dismiss[1] on October 10, 2006 (Dkt. # 98) and Francisco Almeida and Wanda Cruz Quiles (collectively "Almeida") replied on February 16, 2007 (Dkt. # 119). Co-defendant Real Anon, Inc. ("Real Anon") filed a reply to Plaintiffs' opposition to their motion to dismiss on March 29, 2007 (Dkt. # 134), and a second and third request for dismissal on March 29, 2007 and April 26, 2007, respectively (Dkt. ## 134 and 135). Plaintiffs' opposition alleges that owning a share of the hereditary estate gives them a legal and equitable interest in the real properties.

The court agrees with co-defendants and finds that owning a share of the hereditary estate is not equivalent to owning a share of the properties comprising the same. In light of the above, Plaintiffs have failed to state a claim upon which relief may be granted, and therefore this court hereby dismisses the complaint against all defendants.

*The Complaint*

The second amended complaint for turnover of property under 11 USC § 542 and willful violation of the automatic stay filed on January 26, 2006 (dkt. #41) alleges the following relevant facts and legal conclusions:

1. Plaintiffs-Debtors filed a voluntary petition for relief on December 9, 2004 (the "Filing Date") under Chapter 11 of the Bankruptcy Code.

2. As of the Filing Date Debtors were the owners of 78.54% of the Gonzalez' estate.

---

[1] In their opposition to the motions to dismiss Plaintiffs also move for partial summary judgment. However, Mr. Almeida and Ms. Cruz have requested an extension of time to oppose said request for summary judgment because they have not concluded the necessary discovery in order to adequately respond to the same. See, Motion Requesting Sanctions and Finding of Contempt Against Plaintiffs-Debtors Morales and Mena filed on June 13, 2007, dkt # 136 and Motion to Inform filed on June 22, 2007, dkt. #140. Therefore, the request for summary judgment will not be entertained at this time.

3. The following defendants are members of the Gonzalez' estate: Maria Antonieta Perez Gonzalez, Jose Antonio Perez Gonzalez, Blanca Magdalena Perez Gonzalez, Maria del Carmen Perez Gonzalez, Ramon de Monserrate Perez Gonzalez, Aura Elba Perez Gonzalez, Jose Guillermo Perez Gonzalez, Wilfredo Gonzalez Claudio, Avelino Gonzalez Claudio, Mercedes Gonzalez Claudio, Norberto Gonzalez Claudio, Jesus Vicente Simon Gonzalez, Rosa Maria Raquel Gonzalez Santiago, Carmen Maria V. Gonzalez Santiago, Magali Minerva Marchand Gonzalez, Lizette Marchand Gonzalez, Nelson Marchand Gonzalez, Olga E. Ortiz Gonzalez, Inocencio Gonzalez Caruso, Frank Gonzalez Caruso, Madeline Isabel Gonzalez Caruso, Aida Rosa Gonzalez Rivera, Juan Ramon Gonzalez Rivera, Octavio Manuel Gonzalez Rivera, Carlos Ivan Gonzalez Nogeras, Lilliam Gonzalez Gonzalez, Carlos Rafael Gonzalez Gonzalez, Rafael Angel Gonzalez Gonzalez, Manuel A. Gonzalez Alvarado, Victor Manuel Molina Gonzalez, Sandra Ester Molina Gonzalez, Josefa Maria Gonzalez Vega, Rene Edgardo Torres Davila, Hector Adrian Torres Davila and Estefania Rolon Claudio, who are or were members of the estate of Maria Josefa, Maria de las Mercedes and Jose Antonio Gonzalez Rodriguez.

4. The referred 78.54% participation was bought by Plaintiffs from various members of the Gonzalez' estate through deeds executed before notary public Olga M. Shepard de Mari titled "Sale of Hereditary Right, Cession of Rights and Shares" for a total price of $1,570,808.89. The executed deeds contain the sale of the hereditary rights of certain[2] heirs in favor of Eliseo

---

[2] Upon examination of the deeds of "Sale of Hereditary Rights, Cession of Rights and Shares" it appears that Debtors/Plaintiffs acquired hereditary shares of each of the following heirs: Orlando Gonzalez Claudio, Mercedes Gonzalez Claudio, Carmen Maria Victoria Gonzalez Santiago, Estefania Rolon Claudio, Lizette Maritza Marchand Gonzalez, Magali Minerva Marchand Gonzalez, Jesus Vicente Simon Gonzalez, Maria Cristina Simon Gonzalez, Rosa Maria Gonzalez Santiago, Juan Ramon Gonzalez Rivera, Octavio Manuel Gonzalez Rivera, Aida Esther Gonzalez Rivera, Carlos Ivan Gonzalez Nogueras, Nelson Javier Marchand Gonzalez, Rene Edgardo Torres Davila, Hector Adrian Torres Davila, Sandra Esther Molina Gonzalez, Josefa Maria Gonzalez Vega, Maria Mercedes Molina Gonzalez, Olga Esther Ortiz Gonzalez, Manuel Martinez Gonzalez. See,

Morales Garcia and Maribel Mena Melendez as purchasers, which affect the following items of property (the "Subject Properties"); the only known assets of the Gonzalez' estate:

Parcel A

UNIMPROVED REAL ESTATE: Plot of land located in the Rio Abajo Ward within the city limits of Vega Baja comprising 58.91 *cuerdas*, equal to 231,539.6048 square meters; bounded on the NORTH, in 240.98 meters, by Commonwealth Highway 2 between Vega Alta and Vega Baja, by a lot that was formerly owned by Manuel Dorna, presently Commonwealth Road 155 and by land owned by the Municipality of Vega Baja; on the SOUTH in 169.92 meters by what were formerly Carmen Sugar Mill and the Estate of Maysonet, presently the Land Authority and in 86.80 meters by property of Ramon Rivera; on the EAST, in 355.12 meters, by Commonwealth Road 674 and in 282.50 meters by property of Ramon Rivera; and on the WEST, in 250.18 meters, by a lot previously owned by Manuel Dorna and Vega Baja Fruit Company, presently Pueblo Ward of the Municipality of Vega Baja and in 447.00 meters by the Estate of Casanova and the Land Authority.

It is free of encumbrances.

It is recorded in the name of MARIA JOSEFA GONZALEZ RODRIGUEZ and MARIA DE LAS MERCEDES GONZALEZ RODRIGUEZ, now her estate, in equal shares amongst themselves, as appears from deed 83 executed before Enrique Rincon-Plumey on October 29, 1916, recorded in the Property Registry, formerly the Second Section for Bayamon, presently the Fourth Section, at Page 206, Volume 17 for Vega Baja, first entry, property number 781.

According to the Property Registry, the following lots have been individualized from the aforementioned property:

Plot of land of ten *cuerdas*, equal to 39,303.9560 square meters, in favor of Maria de las Mercedes Gonzalez-Rodriguez, recorded at Page 160, Volume 20 for Vega Baja, property number 896.

Plot of land of ten *cuerdas*, equal to 39,303.9560 square meters, recorded at Page 160, Volume 48 for Vega Baja, property number 2127.

Plot of land of 1.5766 *cuerdas*, equal to 6,196.515 square meters, in favor of the Municipality of Vega Baja, Civil Case No. KEF-81-0117 dated March 21, 1981

Plot of land of 5,152.61 square meters in favor of the Municipality of Vega Baja, Civil Case KEF-1996-439, presented for recordation at entry 125, Daily Log 40, Fourth Section for Bayamon of the Property Registry.

Plot of land of 1,361.39 square meters in favor of the Municipality of Vega Baja, Civil Case KEF-1996-352, presented for the recordation at entry 166, Daily Log 48, Fourth Section for Bayamon of the Property Registry.

---

Complaint, dkt #1, Ex A p. 19-27.

After individualization of the aforementioned plots of land, PARCEL A has the following description:

PARCEL A:

UNIMPROVED REAL ESTATE: Plot of land located in the Rio Abajo Ward within the city limits of Vega Baja comprising 35.676 *cuerda*, equal to 140,220.79 square meters; bounded on the NORTH, by Commonwealth Road 155 and by land owned by the Municipality of Vega Baja; on the SOUTH by the Land Authority and by property of Ramon Rivera; on the EAST, by Commonwealth Road 674 and by property of Ramon Rivera; and on the WEST, by Pueblo Ward of the Municipality of Vega Baja, the Estate of Casanova and the Land Authority.

It is free of encumbrances.

Parcel B

UNIMPROVED REAL ESTATE: Plot of land located in the Rio Abajo Ward within the city limits of Vega Baja comprising ten *cuerdas*, equal to 39,303.9560 square meters; bounded on the NORTH, in 66.10 meters, by what was formerly Commonwealth Highway 2 between Vega Alta and Vega Baja, presently Commonwealth Road 155; on the SOUTH in 347.10 meters by what was formerly Colina Vereda of the Estate of M. Francisco Otero, presently the Land Authority and in 86.80 meters by property of Ramon Rivera; on the EAST, in 357.75 meters, by the Estate of Jose Antonio Gonzalez Rodriguez; and on the WEST, in 353.80 meters, by what was formerly La Vereda community path, presently Commonwealth Road 674.

It is recorded the Property Registry, formerly Second Section for Bayamon, presently Fourth Section, as property 896, at Page 160, Volume 20 for Vega Baja, first entry, under the name of MARIA DE LAS MERCEDES GONZALEZ RODRIGUEZ, presently her estate, as per deed 23 executed in Vega Baja on February 7, 1924, before Victoriano M. Fernandez, Notary Public.

The following plots of land have been individualized from said property:

Plot of land of 0.1699 *cuerdas*, equal to 667.78 square meters in favor of the Municipality of Vega Baja, Civil Case No. KEF-91-0020, dated January 31, 1991.

Plot of land of 0.6039 *cuerdas*, equal to 2,373.69 square meters in favor of the Municipality of Vega Baja, Civil Case No. KEF-92-0083, dated January 10, 1991.

After individualization of the aforementioned plots of land, PARCEL B has the following description:

UNIMPROVED REAL ESTATE: Plot of land located in the Rio Abajo Ward within the city limits of Vega Baja comprising 9.2262 *cuerdas*, equal to 36,262.486 square meters; bounded on the NORTH by Commonwealth Road 155; on the SOUTH by the Land Authority; on the EAST by the Estate of Jose Antonio Gonzalez Rodriguez; and on the WEST by Commonwealth Road 674.

It is free of encumbrances.

Parcel C:

UNIMPROVED REAL ESTATE: Plot of land located in the Rio Abajo Ward

- 5 -

within the city limits of Vega Baja comprising 21.87 *cuerdas*, equal to 85,957.7518 square meters; bounded on the NORTH, in 231.48 meters, by what was formerly Commonwealth Highway 2 between Vega Alta and Vega Baja, presently Commonwealth Road 155; on the SOUTH, in 229.31 meters by what was formerly Colina Vereda owned by Finlay Waymourths and Company, presently the Land Authority; on the EAST, in 411.88 meters, by land formerly owned by Andres Avelino Gonzalez, presently Centro Comercial Plaza Vega Baja and Sobrino Rubi Corporation; and on the WEST, in 357.75 meters, by property owned by Maria Josefa and Maria de las Mercedes Gonzalez Rodriguez, presently her estate.

It is recorded in the Property Registry at Page 78, Volume 8 for Vega Baja, formerly the Second Section, presently the Fourth Section, property number 275, eighth entry, in the name of JOSE ANTONIO GONZALEZ RODRIGUEZ, presently his estate, as appears from deed 66 executed before Enrique Rincon-Plumey, Notary Public, in Vega Baja on October 29, 1916.

5. Debtors' participations in the Gonzalez' estate are property of Debtors' estate in bankruptcy.

6. The Bayamon Court authorized the sale of the aforementioned properties through a public auction which took place on December 20, 2004, eleven days after the Filing Date, in spite of Debtors' request for a stay of all proceedings filed on December 17, 2004, in light of the automatic stay provisions of the Bankruptcy Code.

7. At the public auction Almeida paid $3,665,000.00 for the properties, monies which are currently consigned in the Bayamon Court.

8. Debtors filed a motion before the Hon. Luisa M. Colom, Superior Court Judge, to declare the public sale null and void on December 22, 2004. Said request was originally granted by Judge Colom but after scheduling an emergency hearing for January 27, 2005 Judge Colom vacated her original ruling and determined that the public auction was valid[3].

---

[3] Judge Colom was included as a defendant in the above captioned case. However, on May 9, 2006 this court determined that Judge Colom is entitled to judicial immunity for her decision declaring the sale valid, therefore the complaint was dismissed as to her. Partial judgment was entered accordingly. Dkt.#74. Furthermore, on May 26, 2006 the court ordered her name to be stricken from the caption. Dkt. #81.

- 6 -

9. On April 26, 2006, four months after the public sale took place, Almeida, fully cognizant of the Debtors' bankruptcy petition, sold the Subject Properties to co-defendant Real Anon for the sum of $5,900,000.00 ($2,235,000.00 more than the sales price at the public auction), through deed number 196 before attorney Jose Ernesto Rivera Reyes.

10. Notice of the filing of the Debtors' bankruptcy petition was given to the members of the Gonzalez' estate, Almeida and Real Anon.

11. The continued efforts made by co-defendants Almeida, Real Anon, the Gonzalez' estate members and RG Premier Bank of Puerto Rico (the financing entity of the sales of the Subject Properties), cognizant of the Debtors' bankruptcy petition, to declare the public auction valid and to obtain property of the Debtors' estate, constitute a willful violation of 11 USC 362(a).

12. Co-defendant RG Premier Bank, knowing of Debtors' bankruptcy filing, proceeded to finance both sales as evidenced by two mortgages affecting the Subject Properties duly presented before the Registry of Property, one executed on January 9, 2005 and the other on March 18, 2005.

13. Defendants were obligated to turnover property of the estate upon notice of the filing of the bankruptcy proceedings pursuant to 11 USC § 542(a).

14. By requesting that the public auction be declared valid in order to maintain possession of the Subject Properties knowing of the filing of Debtors' Chapter 11 petition, the Gonzalez' estate members, Almeida, Real Anon and RG Premier Bank are in fact preventing Debtors from exercising control over property of the estate which constitutes a willful violation of the provisions of Section 542(a).

15. The sale of the properties by Almeida to Real Anon constitutes an illegal disposition

- 7 -

of property of the estate.

16. The intentional, deliberate and unlawful conduct of defendants entitle Debtors to compensatory damages.

17. Plaintiffs pray that this court enter an order directing Judge Colom to declare the public auction null and void and to return to the highest bidder the money consigned in the Bayamon Court, declaring the sale between Almeida and Real Anon null and void, finding defendants in contempt of court for violating the provisions of 11 USC § 362 and 542(a), and awarding punitive damages, attorney's fees and costs pursuant to 11 USC § 105(a).

*Motions to Dismiss*

In its motion to dismiss Almeida alleges that the real estate properties subject to this litigation were never owned by Plaintiffs and are not part of their bankruptcy estate, thus the automatic stay provisions were not applicable with respect to the sale of the same. Almeida argues that the Supreme Court of Puerto Rico has determined that owning a participation in an estate is not equivalent to owning a participation in the properties owned by that estate, and for this reason, the Superior Court of Puerto Rico (Hon. Carlos Rivera Marrero), ordered the sale of the Subject Properties at public auction, and determined that Plaintiffs herein own a credit equal to 78.54% of the minimum price of the real properties to be sold in the public sale. Almeida adds that it is clear that the automatic stay triggered by the bankruptcy petition affected 78.54% of the price obtained from the sale of the Subject Properties which is consigned in the Bayamon Court, as admitted by Plaintiffs, and did not affect the real properties themselves. Almeida concludes that even considering the well pleaded allegations of the Second Amended Complaint as true and drawing all reasonable inferences in the Plaintiffs favor, the complaint fails to state a claim upon which relief may be granted; the sale of the Subject Properties did not affect any

- 8 -

cognizable right of the Plaintiffs and did not violate a provision of the Bankruptcy Code.

Almeida's motion to dismiss includes as an exhibit a Puerto Rico Court of Appeals judgment in the case of Carmen M. V. Gonzalez Santiago v. Inocencio Gonzalez Caruso el al, 2005 WL 808015 (TCA, 2005), dated February 9, 2005.  Almeida argues that the determination of the Court of Appeals that Plaintiffs never owned any interest in the Subject Properties has *res judicata* effect and any attempt to relitigate those issues is precluded under this doctrine.

In its motion to dismiss Real Anon alleges that it legally purchased the Subject Properties from Almeida, who had legally purchased the same in a public auction authorized by the Bayamon Superior Court.  According to Real Anon, Almeida appeared as the title holder of the Subject Properties in the Registry of Property of Puerto Rico when they bought them.  Real Anon maintains that they are a good faith third party as they relied on acts authorized by the state court and the Registry of Property of Puerto Rico.  They further argue that Plaintiffs own an undivided quota or an abstract participation over the total hereditary patrimony, which is not equal to owning a participation in a particular property of the hereditary estate.  Plaintiffs' participation is over the $3,665,000.00 deposited in the Superior Court and not over the individual properties later acquired by Real Anon.

In response to Almeida's motion to dismiss Plaintiffs argue that because they own 78.54% of the hereditary shares in the Gonzalez' estate and said estate owns the real properties bought by Almeida, Plaintiffs have a legal and equitable interest in these real properties which are, thus, property of the estate.  Also, Plaintiffs assert that the members of a hereditary estate are considered to have a community of assets which is equivalent to the community property listed in

§ 541(a)(2)(A) as property of the estate[4]. As to Real Anon's motion to dismiss Plaintiffs allege that Real Anon does not meet the requirements to be deemed a good faith third party because they did not perform the diligence required by merely relying on the title study. Also, Plaintiffs argue that it is uncontested that they may not record in the Registry of Property their participation in the Gonzalez' estate but that does not entail that they do not have a participation in the real estate.

*The Court of Appeals Decision*

The Court of Appeals February 9, 2005 judgment was entered in the case of division of the hereditary estate of the siblings Maria Josefa, Maria de las Mercedes and Jose Antonio Gonzalez, which include 42 heirs. The judgment provides as follows.

The case was filed in 1999 and was concluded on June 14, 2000 through judgment entered. The assets belonging to the Gonzalez' estate, to be distributed to the heirs, comprised of three real properties located in the municipality of Vega Baja (the same Subject Properties described herein above). On May 9, 2002 the Superior Court ordered the sale of these properties

---

[4] Section 541(a)(2)(A) of the Bankruptcy Code provides that

(a) The commencement of a case under section 301, 302 and 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

...

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is

(A) under the sole, equal, or joint management and control of the debtor...

The "community property" referred to in this section relates to marital property in those states that have adopted a community property system, and not to the hereditary community formed when there is more than one heir to an inheritance. See, 5 Lawrence P. King, Collier on Bankruptcy, ¶541.13[1], p. 541-80.12, fn 2 (15th ed. Revised). Consequently, this provision is inapplicable here. In any event, Plaintiffs participation in the hereditary estate as members of the hereditary community would not entail their ownership of the particular assets of the hereditary estate which is Plaintiffs' basis for the complaint.

- 10 -

through public auction and determined that the intervening parties, Mr. Eliseo Morales and Maribel Mena (Plaintiffs herein) have a credit equal to 78.54% of the minimum price of the properties to be sold.  After re appraising the properties, on August 27, 2004 the Superior Court again ordered the sale of the Subject Properties through public auction.  Upon reconsideration and request for authorization to conduct a private sale, on December 2, 2004 the court determined that the May 9, 2002 order must be complied with and the Subject Properties must be sold through public auction.  The Gonzalez' heirs appealed this decision to the Court of Appeals.

In its opinion the Court of Appeals recognizes that the intervening parties Mr. and Mrs. Morales (Plaintiffs herein) filed a bankruptcy petition on December 9, 2004 as informed in a motion requesting the stay of the proceedings.  The Court of Appeals also points out that on December 22, 2004 Mr. and Mrs. Morales requested to the Superior Court that the public sale be declared null and void inasmuch as it involved the disposition of their proprietary interest after the bankruptcy filing, in contravention of the automatic stay provision of the Bankruptcy Code. On January 13, 2005 the Superior Court ordered that in view of the bankruptcy filing of the intervening parties (Plaintiffs herein), all proceedings after December 17, 2004[5] be declared null and void, the consigned monies to be returned and the matter referred to the Bankruptcy Court.

The Court of Appeals concluded that Mr. and Mrs. Morales (Plaintiffs herein) do not own any proprietary interest in the real properties sold in the public auction and remanded the case to the Superior Court for a determination on which participation, if any, corresponds to Mr. and Mrs. Morales in the Gonzalez' estate, vacating the May 9, 2002 Superior Court judgment

---

[5]  It is unclear why the Superior Court determined that it was after this date that all proceedings be declared null.  As previously stated Mr. and Mrs. Morales filed their bankruptcy petition on December 9, 2004, and the public sale appears to have taken place on December 20, 2004.

- 11 -

recognizing a credit in favor of Plaintiffs herein equal to 78.54% of the price of the real properties. The Court of Appeals further determined that even if Mr. and Mrs. Morales had in fact a credit equal to 78.54% of the minimum price of the properties to be sold as stated in the May 9, 2002 order, they have an interest in the result or price, not in the properties themselves, because only the division of the estate confers the heirs title over the estate assets. The sale of the hereditary rights is not equivalent to the act and distributing effect resulting from the hereditary division through which each heir receives their share.

The Court of Appeals also stated that the action involves the liquidation and division of hereditary property, and the only parties with standing are the recognized heirs and the creditors of the estate to be liquidated (not the creditors of particular heirs). Since Mr. and Mrs. Morales have not shown that they are title holders of any of the Subject Properties, or creditors of the Gonzalez' estate, they lack standing in that action. The Court of Appeals did not find a reason why the bankruptcy filing would affect that action, unless the Bankruptcy Court, with its exclusive jurisdiction, finds otherwise. The Court of Appeals also determined that even if Mr. and Mrs. Morales were to show that they substitute 78.54% of the heirs, appearing by name and percentage of participation, the public sale does not affect them because what they are entitled to is a percentage of the product of the sale. Plaintiffs, as purchasers of hereditary shares, could not and have not acquired the real properties themselves. Therefore, the Court of Appeals reversed the ordered entered on January 13, 2005 finding the public sale held on December 20, 2004 null and void.

*Standard for Granting a Motion to Dismiss*

Motions to dismiss are governed by Federal Rule of Civil Procedure 12(b)(6), which provides that a defense of "failure to state a claim upon which relief can be granted" to a claim

- 12 -

for relief may be presented by motion before the filing of a responsive pleading.

For purposes of a motion to dismiss, "(1) the complaint is construed in the light most favorable to the plaintiff, (2) its factual allegations are taken as true, and (3) all reasonable inferences that can be drawn from the pleading are drawn in favor of the pleader." Wright & Miller Federal Practice and Procedure: Civil 3d § 1357 at 417, citing Viera Marcano v. Ramirez Sanchez, 224 F. Supp. 2d 397 (D.P.R. 2002).  See also, Correa Martinez v. Arrillaga-Belendez, 903 F.2d 49, 51 (1st Cir. 1990).  The plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." Id., citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988).  See also, LaChapelle v. Berkshire Life Insurance Company, 142 F.3d 507, 508 (1st Cir. 1998) (In considering a motion to dismiss under Rule 12(b)(6), the court must "determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory.")

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Federal Practice and Procedure §1357 at 571, quoting Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); see also, In re Diamond, 346 F.3d 224 (1st Cir. 2003); Leopoldo Fontanillas, Inc. v. Luis Ayala Colon Sucesores, Inc., 283 F. Supp.2d 579 (D.P.R. 2003); Eastern Food Services, Inc. v. Pontifical Catholic University of Puerto Rico Service Association, Inc., 222 F. Supp.2d 131, 134 (D.P.R. 2002).  Therefore, "the question on a motion to dismiss under Rule 12(b)(6) is whether in the light most favorable to the plaintiff, and with every doubt resolved in the pleader's behalf, the complaint states any legally cognizable claim for relief." Id. at 640.  "Because a dismissal terminates an action at the earliest stages of the litigation, without a developed factual basis for decision, the court must carefully balance the

rule of simplified civil pleading against the need for something more than conclusory allegations. _Washington Legal Foundation v. Massachusetts Bar Foundation_, 993 F. 2d 962, 971 (1st Cir. 1993). The court will not accept unsupported conclusions or interpretations of the law. _Id._

*Applicable Bankruptcy Law*

Plaintiffs allege willful violation of the automatic stay provision and failure to turnover property of the estate. The automatic stay provision of the Bankruptcy Code, Section 362 (a) provides as follows

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of-

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

- 14 -

11 USC § 362(a)[6].  In turn, property of the estate is defined in § 541(a) of the Bankruptcy Code as follows

> **(a)** The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

> **(1)** Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

> **(2)** All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is--

> **(A)** under the sole, equal, or joint management and control of the debtor; or

> **(B)** liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

> **(3)** Any interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title.

> **(4)** Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.

> **(5)** Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date--

> **(A)** by bequest, devise, or inheritance;

> **(B)** as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or

> **(C)** as a beneficiary of a life insurance policy or of a death benefit plan.

> **(6)** Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

> **(7)** Any interest in property that the estate acquires after the commencement of the case.

11 USC § 541(a).

---

[6]  Unless otherwise noted, all statutory section references herein are to the Bankruptcy Reform Act of 1978, as amended, 11 USC §§ 101, *et seq.* applicable in the case at bar.

## Discussion

The case is before us on a motion to dismiss, therefore, we construe the complaint in the light most favorable to the plaintiff, and will consider the factual allegations made as true. Federal Practice and Procedure § 1357 at 417. Plaintiffs allege that they own 78.54% of the hereditary shares in the Gonzalez' estate which they purchased through deeds of "Sale of Hereditary Right Cession of Rights and Shares" executed with various heirs, mostly in 1999[7]. Plaintiffs argue that because they own 78.54% of the hereditary participations in the Gonzalez' estate, said participations grant them a legal and equitable interest in the Subject Properties which makes them property of the Plaintiff's bankruptcy estate. We disagree.

The Bankruptcy Code in its section 541(a) provides that the bankruptcy court will have jurisdiction over all property of the estate "wherever located and by whomever held", and to determine what is and what is not property of the estate. Norton Bankruptcy Law and Practice 2d, § 51:3. However, it is state law that determines "the existence, nature, and extent of any property interests a debtor may have", that is, whether the debtor has an interest in property is determined by state law. *Id.* The First Circuit Court of Appeals in In re The Ground Round, Inc., 482 F.3d 15, 17 (1st Cir. 2007), held the following:

> Under the Bankruptcy Code the debtor's estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The section is construed broadly, *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204-05 & n. 9, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), and the meaning of the quoted phrase is a matter of federal law; but the existence and extent of the debtor's *interest* is ordinarily a creature of state law. *Butner v. United States,* 440 U.S. 48, 54-55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *see also* 1 Queenan et al., *Chapter 11 Theory and Practice* § 9.07 (1994).

---

[7] Out of 20 deeds executed with different heirs, copies of which were attached to Plaintiff's opposition to the motions to dismiss, dkt # 98, one was executed in 1996 and the others in 1999.

*Id.* Consequently, in this case, the extent of Plaintiffs' rights over the Subject Properties is governed by Puerto Rico law.

This court gives deference to the lucid and well-reasoned February 9, 2005 Court of Appeals opinion and order, which guided this bankruptcy judge through the convoluted background of this case. The Court of Appeals stated that the bankruptcy court has exclusive jurisdiction to determine what is property of a bankruptcy estate and if there has been a violation of the automatic stay provision of the Bankruptcy Code. 28 USC §1334(a), 28 USC §157. However, the Court of Appeals also found, with respect to the essence of the transactions executed in this case and the legal implications of the same in this context, that according to the laws of Puerto Rico, the properties sold were not property of the debtors' bankruptcy estate. The Court of Appeals remanded the case to the Superior Court for a determination of what participation, if any, the Plaintiffs herein own in the hereditary estate of the Gonzalez family, as it appears that they had been presented, not with the deeds of sale of hereditary rights, but with options to sell hereditary rights. However, the Court of Appeals, in its exposition of the applicable law considered and analyzed the scenario before us today, that is, that Plaintiffs owned shares of the hereditary estate by virtue of deeds of sale executed with certain heirs. It was its conclusion, as it is ours, that the fact that Plaintiffs own 78.54% of the Gonzalez' estate means they have a credit against the product of the sale of the Subject Properties and does not imply ownership of the real properties owned by the Gonzalez' estate.

As a general rule when a person dies, the person's rights and liabilities are transmitted to the heirs. 31 L.P.R.A. § 2081. "The inheritance includes all the property, rights and obligations of a person which are not extinguished by his death. 31 L.P.R.A. § 2090. If there is more than one heir to the inheritance, a hereditary community is created. <u>Sociedad Legal de Gananciales v.</u>

Registrador de la Propiedad, 151 D.P.R. 315, 317 (2000)(citations omitted).  The object of the hereditary community is the estate as a whole, and not each asset, right or liability in particular. Kogan v. Registrador, 125 D.P.R. 636, 650 (1990).  Therefore what each heir is entitled to is a right over the estate as a whole (*titularidad de una cuota en abstracto*), not over the particular assets. *Id.* at 652.  This is called a hereditary right in the abstract which implies that until a division is not effectuated, the heirs may not claim a right over any particular asset. *Id.*  It is the division of the estate that concludes the hereditary community and only through the division of the estate heirs may become exclusive title holders of its assets. *Id.* at 318; Gutierrez v. Registrador, 114 D.P.R. 850, 857 (1983).  In fact, as conceded by Plaintiffs, the Supreme Court of Puerto Rico in the case of Sociedad Legal de Gananciales v. Registrador de la Propiedad, 151 D.P.R. 315 (2000) determined that our mortgage law prohibits the registration in the Registry of Property of Puerto Rico of shares over a particular real property before the division of the estate.

In light of the aforestated, and considering the allegations made in the complaint as true, Plaintiffs own 78.54% of the hereditary participations in the Gonzalez family hereditary estate but said participations do not grant them a legal or equitable interest in the Subject Properties. Therefore, the Subject Properties are not property of the estate and the public auction held on December 20, 2005 was not subject to the automatic stay provision of the Bankruptcy Code upon Plaintiffs' bankruptcy filing.

- 18 -

In view of the foregoing, Almeida's motion to dismiss is granted. The case is hereby dismissed as to all defendants due to Plaintiffs' failure to state a claim upon which relief may be granted. The Clerk shall enter judgment accordingly.

SO ORDERED.

In San Juan, Puerto Rico, this 12th day of October 2007.

ENRIQUE S. LAMOUTTE
U. S. Bankruptcy Judge